FRANCISCO SERVERA SILVA, Plaintiff and Appellant, v. JUAN PEDROSA ET AL., Defendants and Appellees.

No. 5777. Argued May 27, 1932.—Decided June 24, 1932.

Luis A. Limeres for appellant. Celestino Iriarte, Jr., and F. Fernández Cuyar for appellees.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

This is an action of debt based on a promissory note which literally copied reads as follows:

"On the 18th day of March, 1930, we, jointly and severally, promise to pay to the order of Mr. Francisco Servera Silva, in San Germán, Puerto Rico, the sum of ONE THOUSAND DOLLARS, value received. Said sum will draw interest at the rate of twelve per cent per annum after maturity. We expressly submit to the jurisdiction of the District Court of Mayagüez, Puerto Rico, and we bind ourselves to pay the costs and expenses that collection thereof might cause, including fees of any attorney who may be engaged by the holder of the present instrument in case of judicial claim.—San Juan, P. R., December 18, 1929. (Signed) Juan Pedrosa, Debtor.—(Signed) Celso Caballero—Debtor.—I hereby bind myself as solidary surety to the fulfillment of the above obligation—San Juan, P. R., December 18, 1929.—(Signed) Celestino Iriarte, Jr., Surety."

The District Court of Mayagüez rendered judgment in favor of the defendants, and the plaintiff took the present appeal.

The first error attributed to the lower court by the appellant is that said court failed to file a written opinion giving the reasons for its decision as required by law. This Court has insistently urged compliance by the judges with the duty imposed on them by the statute. There is no reason to justify the non-compliance with this duty. Obedience to and compliance with the law is the least that can be expected from a court of justice. The fact that this Court has held that failure to comply with said duty is no ground for a reversal of the judgment does not relieve the courts from their obligations to observe the provisions of the statute.

The plaintiff has also assigned three other errors, which can be reduced to one, as they all relate to the weighing of the evidence.

The defendants admitted the execution of the instrument on which this action is based, but they claim that Iriarte

subscribed the obligation in order to facilitate its discount at a bank, without assuming any liability for its payment, and that they have not paid said obligation because the plaintiff agreed to extend the time of its maturity until defendant Celso Caballero should obtain the settlement of a claim he had against the Dominican Republic for some construction work done in that country, payment of which was to be received about February, 1931.

The plaintiff, Servera, testified among other things that he had a claim against Pedrosa and Caballero for some money, that Iriarte informed him that those gentlemen could not pay the debt, and that it was agreed that a note for the sum of $1,000 would be issued to him. He added that as he could not take an instrument which was not sufficiently secured, Mr. Iriarte agreed to be a surety thereon, and the note for $1,000 was delivered to him. Mr. Iriarte, he said, served as a friendly mediator in relation to Pedrosa and Caballero and he intervened in order to help both parties. Mr. Iriarte was not his representative, but he acted in a friendly capacity to smooth things. As regards the note, Iriarte's intervention was in the capacity of a solidary surety in order to increase the value of the instrument, inasmuch as Pedrosa and Caballero had told him that they could not obtain money from any bank in Puerto Rico. He repeated that Iriarte had signed as a solidary surety and that he did not understand that the document was subscribed in order to be discounted in San Germán; that, as a matter of fact, it is not true that the document was discounted at the bank in San Germán; that Iriarte executed the instrument and delivered the same to him with his signature thereon; that Iriarte had agreed to sign the note and that, otherwise, he would not have accepted it as it was of no value. He further stated that he had received several telegrams from Iriarte advising him that he was taking steps in order that the note be paid; that really he did not demand payment from Iriarte as a matter of courtesy, but that this gentleman was bound

to feel concerned, inasmuch as a collection could not be made; that he never agreed to an extension of said promissory note; that the time of payment of said note had never been extended.

Iriarte, after extensively explaining his intervention in this matter, testified that Servera requested Caballero to give him a note to be discounted at a bank, in consideration of an extension of time to be granted on a mortgage due until Caballero could settle his business in Santo Domingo; and that Caballero then said: "Well, I will subscribe a note for you to discount, but when will it become due?" to which Servera answered "in ninety days"; that the witness said Pedrosa had agreed to sign and that then Servera said: "Well, Mr. Iriarte, you will sign the obligation," and thereupon he answered that he had no objection, and he signed it, not as a surety, but to facilitate the discount at the bank; that three or four days later, when Caballero came from the Island, they all signed the instrument and the witness sent it to Servera; that then a change of government took place in Santo Domingo, all business came to a standstill, and Servera wrote to him several letters asking him to take steps to obtain from Pedrosa and Caballero the payment of the note; that in none of said letters he demanded payment from Iriarte; that as the witness was not indebted to Servera there was no reason for his securing any obligation in his favor; that at this stage, Mr. Servera came to his office and said: "Please take account of my situation, Mr. Iriarte"; that the witness replied: "What do you want me to do? Caballero has been sued, he owes to the bank over $130,000, and he has no credit; Pedrosa has been sued time and again by the banks and he can not pay"; that then Servera inquired as to when the Santo Domingo business would be settled and upon the witness answering that soon, he agreed to leave the matter pending until that settlement occurred; that afterwards, unexpectedly, he received a letter from García Méndez informing him that Servera had

engaged him to collect from Pedrosa and Caballero, and that the witness stated in reply: ''I think Don Pancho will get nothing by suing them. His suing me before this court would be an idle step. Tell him to wait and that they are willing to renew the obligation and to pay the interest accrued''; that García Méndez wrote to him that Limeres had taken charge of the matter; that Servera never made any reference to him and never had spoken to him in regard to any obligation contracted with him; that if at any time it had been suggested to him that he sign that instrument as a solidary surety, he would not have signed to secure the payment of $1,000, for which sum he was not responsible.

As we have seen, Iriarte subscribed the instrument as a solidary surety, but he testified, without objection on the part of the plaintiff, that he had not signed as a solidary surety but in order to facilitate the discounting of the note at the bank. Plaintiff cites the case of *Sarria* v. *V. Alvarez & Co.*, 38 P.R.R. 813, and argues that the sole declaration of the person bound to pay is not enough to refute an undertaking embodied in an instrument which has given rise to a contractual relationship (*estado de derecho*) as between the plaintiff and the defendants.

Of course, plaintiff refers rather to the weight of the parol evidence than to its admissibility, since Iriarte explained extensively his intervention in this case without any interruption or objection having been made during his testimony. Iriarte stated that he would not have subscribed the instrument if it had been suggested to him that he was signing as a solidary surety. However, the fact is that his own words clearly appear in the promissory note, and that this note was sent by Iriarte to Servera after the conference between the plaintiff and the defendants had taken place. Iriarte testified that he signed the instrument in order that it should be discounted at a bank, that is, so that it could go into the hands of a third person, who could demand payment thereof at maturity from any of the subscribers, including the

solidary surety. Such third person was not bound to release Iriarte from the obligation contracted. It follows that Iriarte knew when he signed the document that he was contracting an obligation which he could not evade. Servera stated that the document was not discounted at the bank of San Germán. It does not appear that it was discounted at any bank. The instrument was signed on December 18, 1929, and the complaint was filed on October 21, 1930. Iriarte, with knowledge that the instrument was in the hands of Servera, and notwithstanding the steps taken by him towards a settlement, permitted his signature to remain on the instrument, and it does not appear from the record that he ever made any effort to have it withdrawn. If Iriarte only signed in order that the note could be discounted but the instrument was not in fact discounted, it seems natural that he should have attempted to withdraw his signature when the reasons that led him to sign the note no longer existed. Iriarte testified that as he was not indebted to Servera, there was no reason for his securing any obligation in his favor. Iriarte did not sign the instrument as a debtor but as a solidary surety. Indeed, the contract of suretyship is essentially a gratuitous one, although our Civil Code provides that it might also be based on a valuable consideration.

As to the extension of time claimed by the defendants, Iriarte testified that he had told Servera that the Dominican business would be settled at any moment, and that Servera then agreed to leave everything pending until said business were settled. Iriarte does not state the date of this conference with Servera. We have no knowledge as to how much time elapsed from this meeting to the filing of the complaint. The testimony itself, given by Iriarte, shows that if Servera consented, he did so under the impression that the Santo Domingo matter would be settled at any moment. We do not know whether or not that matter was already settled when the complaint was filed. Servera

absolutely denies having granted an extension of time. In these circumstances, and considering the facts as they have been stated by the parties concerned, we think that it has not been proved that Servera granted the extension of time alleged by the defendants in their answer.

Lastly, Iriarte urges in his favor that payment was not demanded from him. Section 1078 of the Civil Code, 1930 edition, provides that obligations, the fulfillment of which has been fixed for a day certain, shall only be demandable when the proper day arrives; and section 63 of the Code of Commerce, in force both when the promissory note was made and when it matured, provides that the effects of delay in compliance with commercial obligations shall begin, in contracts in which a day is fixed for compliance therewith by the will of the parties or by law, on the day following the one on which they fall due. In this case we have a promissory note which matured on March 18, 1930. The enforcibility of the obligation is clearly established by the laws, as it is a promissory note the payment of which has been fixed for a day certain, and the creditor could have sued on it from the day it became due.

We admit that Iriarte acted in this case for the benefit of all concerned and with the best of intentions; but we can not ignore the fact that he subscribed the obligation as a solidary surety and that he must face the consequences of his own acts.

For the reasons stated, we are of the opinion that the judgment appealed from should be reversed and defendants Celso Caballero, Juan Pedrosa and Celestino Iriarte, Jr., adjudged to pay jointly and severally to plaintiff the sum of $1,000, with the stipulated interest and costs.